Plaintiff was not present for oral argument at the August 23, 1995 Full Commission hearing. Defendant did not present oral argument but rather relied on its brief and made a motion to dismiss plaintiff's appeal on the grounds that he did not file an Industrial Commission Form 44 or a brief and his claim is therefore subject to dismissal pursuant to Industrial Commission Rule 701. Although defendant's motion is well founded and could be granted under the circumstances, the Full Commission, in its discretion, declines to rule on defendant's motion to dismiss and instead will decide the case on its merits.
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in the Form 21 Agreement for Compensation, which was approved by the Industrial Commission on August 7, 1991, and in the Pre-Trial Agreement filed on March 23, 1993, as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties at all relevant times.
2. The defendant was a duly qualified self-insured with Key Risk Management as the servicing agent on the risk.
3. The plaintiff sustained an admittedly compensable injury on June 17, 1991, when he sustained an electrical shock, which resulted in headaches.
4. The plaintiff's average weekly wage was $224.00, which yields a compensation rate of $149.33.
5. The issue for determination is whether plaintiff's right knee injury was causally related to the June 18, 1991 admittedly compensable accident, and if so, what are the compensable consequences.
6. The parties stipulated 32 pages of medical reports of Dr. Jeffrey Daily; 33 pages of medical records of Mercy South Hospital; 3 pages from Dr. William Moose; 27 pages from Dr. Anthony Wheeler; 3 pages from Dr. Raymond Sweet; 5 pages from Mecklenburg Medical Group; and 61 pages from the Rehab Center, Inc.
7. The depositions of Dr. Greg Bridgeman, Dr. Anthony Wheeler and Dr. Jeffrey Daily were submitted into evidence. All objections raised therein were ruled upon in accordance with the law and this Opinion and Award.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the initial hearing, the plaintiff was a 34 year old high school graduate. On June 18, 1991, plaintiff was working as a hoist operator, lifting platforms containing parts which weigh from 250 to 300 pounds.
2. During the afternoon of June 18, 1991, plaintiff was using the hoist to remove parts from the cleaning tank when the ground wire broke, shorting out the casting of the hoist. As a result, the plaintiff received an electric shock as his right hand grasped the hoist control box.
3. The plaintiff contends that he fell or was knocked by the force of the shock, a distance of five feet from the work platform to the plant floor. There were no witnesses to this alleged fall.
4. Immediately following the incident, the plaintiff was assisted outside the plant by coworker Tim Short. The plaintiff began to feel nauseated, and weak, and had numbness in his right side. The plaintiff noticed that his right knee experienced swelling; however, he felt no pain in the knee.
5. The plaintiff did not report the accident to management, in fact, the plaintiff's supervisor, Myra Hancock was not at work on June 18, 1991.
6. Greg Bridgeman, General Manager of defendant was informed of the incident on June 18, 1991, and he spoke with plaintiff shortly thereafter. Initially, Mr. Bridgeman observed that plaintiff was dazed, and he refused medical treatment. However, by the end of the shift, plaintiff told Mr. Bridgeman that he needed to go and be checked out. Mr. Bridgeman authorized plaintiff to go to Mercy South Hospital. At no time did plaintiff make any complaints to Mr. Bridgeman regarding the right knee.
7. On June 18, 1991, plaintiff went to Mercy South Hospital emergency room, where he reported the electric shock incident. The plaintiff complained of neck pain, but no notation of knee pain or swelling was recorded by either the nurse or treating physician.
8. On June 20, 1991, plaintiff was seen by orthopaedic surgeon Dr. William Moose. At that time, plaintiff complained of nausea, migratory headaches, and occasional tingling and numbness in the right thigh. Dr. Moose noted no complaints of right knee pain.
10. Dr. Wheeler testified that if the plaintiff had complained of a fall and knee pain, he would have noted the complaint and referred plaintiff for orthopaedic assessment.
11. Dr. Wheeler saw plaintiff approximately 20 times from July 5, 1991 to December 4, 1992, and at no time did plaintiff ever complain of right knee pain. Dr. Wheeler observed that plaintiff frequently wore shorts to his appointments, and at no time did the doctor observe any swelling in the knee or any limping. Dr. Wheeler mused that in routine reflex checks, he banged the plaintiff on the right knee, and plaintiff never complained of it, even though patients with sore ankles or knees "don's like you to hit them when they are sore."
12. On July 14, 1991, plaintiff returned to work. Mr. Bridgeman spoke with plaintiff on a daily basis, and except for complaints of headaches, nausea, and dizziness, the plaintiff made no physical complaints regarding the right knee.
13. At no time after his return to work did plaintiff report a knee injury to his supervisor. However, the record clearly establishes that plaintiff and Ms. Hancock had an extremely poor working relationship, and the plaintiff almost never spoke to Ms. Hancock and visa versa, due to her usage of highly derogatory terms directed toward the plaintiff.
14. On July 29, 1991, Dr. Wheeler noted a plaintiff complained of chest pains while playing basketball. The plaintiff was referred to cardiologist, Dr. Yount, where a similar history was given.
15. On September 6, 1991, plaintiff transferred to the wiring harness area, where Dan Gosselin became his supervisor. Plaintiff made continuing complaints regarding headaches and nausea, but no complaints of knee problems.
16. During the summer of 1992, plaintiff played on the defendant's softball team, as the pitcher for 4 or 5 games. The plaintiff also ran the bases.
17. Two rehabilitation nurses were assigned to plaintiff's case, and the plaintiff did not make any complaints regarding right knee pain to either Dianna White or Karen Woolf.
18. The plaintiff first complained of his right knee pain to Dr. Jeffrey Daily, an orthopaedic surgeon on January 21, 1993. Dr. Daily noted plaintiff complained of significant difficulty and instability in the right knee with decreased jumping ability in playing basketball.
19. Dr. Daily subsequently diagnosed plaintiff as having an anterior cruciate ligament tear and lateral meniscal tear.
20. The plaintiff last worked for defendant on March 9, 1993, and on March 10, 1993 underwent surgery to repair his knee.
21. Dr. Daily has opined that the right knee injuries could be the result of the June 18, 1991 incident, however, any opinion would be speculation at best due to the amount of time between the date of the alleged incident and his first examination of plaintiff. Dr. Daily further opined that the injury could be the result of plaintiff's playing basketball of softball.
22. The greater weight of the credible evidence in the record establishes that plaintiff did not report any right knee injury to managers at defendant-employer, or to any health care providers on June 18, 1991. The plaintiff continued to engage in sports activities following the June 18, 1991 incident. If plaintiff had suffered significant swelling, as Dr. Daily testified commonly occur with anterior cruciate ligament and lateral meniscal tear, certainly the swelling would have been visible to examination by Dr. Moose, an orthopaedic surgeon; Dr. Wheeler, a neurologist; and by the emergency room staff at Mercy South Hospital, and would have been noted by these physicians. Furthermore, there were no witnesses in the area who saw plaintiff fall.
23. While coworkers Gerald Lewis and Tim Short testified at the hearing that they observed plaintiff's knee swollen on June 18, 1991, their testimony is not accepted as credible due to their bias against defendant-employer, as evidenced by their grievances against the employer.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On June 18, 1991, plaintiff sustained an admittedly compensable injury, to wit an electric shock. The parties agreed in a Form 21 Agreement that the nature of injury to be treated was headaches.
2. There must be competent evidence to support the inference that the accident in question resulted in the injury complained of. Click v. Pilot Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980). In this case, the competent medical evidence offered by Dr. Wheeler establishes that in over 20 visits from July 5, 1991 to December of 1992, the plaintiff made no complaints of a knee injury, and no examinations disclosed a knee problem. Evidence offered by Dr. Daily establishes that causation would be merely speculative since the plaintiff was first seen by Dr. Daily almost 19 months after the date of the electric shock incident. The plaintiff has failed to carry the burden of proving by competent medical evidence the causal relationship of the right knee injury, and in fact, he remained physically active in sports until he sought treatment from Dr. Daily.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim is and under the law must be DENIED.
2. Each side shall pay its own costs.
 S/ __________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ __________________ THOMAS J. BOLCH COMMISSIONER
S/ __________________ COY M. VANCE COMMISSIONER